RECORD NO. 12-5015

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DOMONIC DEVARRISE USHER,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH

**OPENING BRIEF OF APPELLANT
DOMONIC DEVARRISE USHER**

C. Burell Shella
SHELLA & ASSOCIATES, PC
2530 Meridian Parkway, Suite 300
Durham, NC 27713
(919) 438-3472
chrisshella@yahoo.com

*Counsel for Appellant*

**LANTAGNE LEGAL PRINTING** 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477
**A Division of Lantagne Duplicating Services**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................iii

STATEMENT OF JURISDICTION .................................................... 1

NATURE OF APPEAL.......................................................................... 2

ISSUE PRESENTED .............................................................................. 2

STATEMENT OF THE CASE............................................................... 3

STATEMENT OF FACTS ...................................................................... 4

SUMMARY OF ARGUMENT ............................................................. 12

ARGUMENT ......................................................................................... 13

   I.    WHETHER THE TRIAL COURT IN ALLOWING THE GOVERNMENT TO REPEATEDLY REPEAT THE TESTIMONY OF WITNESSES IMPROPERLY BOLSTERING THEIR TESTIMONY CREATED REVERSIBLE ERROR IN VIOLATION OF FEDERAL RULE SECTION 611(A) AND FEDERAL RULE 403?13 ....................................................... 13

       A.  STANDARD OF REVIEW........................................... 13

       B.  DISCUSSION .............................................................. 14

   II.   DID THE SENTENCING OF MR. USHER TO MORE THAN 2119 MONTHS CONSTITUTE PROHIBITED BY THE 8TH AMENDMENT AS "CRUEL AND UNUSAUL PUNISHMENT" UNDER THE CONSTITUTION? ....................................... 14

       A.  STANDARD OF REVIEW........................................... 14

       B.  DISCUSSION .............................................................. 15

i

CONCLUSION    ....................................................................................... 16

PRAYER ................................................................................................. 16

CERTIFICATE OF COMPLIANCE.......................................................... 18

CERTIFICATE OF FILING AND SERVICE............................................ 19

# TABLE OF AUTHORITIES

## CASES

Alford v. United States,
      282 U.S. 687, 51 S. Ct. 218, 75 L. Ed. 624 (1931) .........................................13

Enmund v. Florida ,
      458 U.S. 782 (1982)........................................................................................15

Harmelin v. Michigan,
      501 U.S. 957 (1991)........................................................................................14

Solem v. Helm,
      463 U.S. 277 (1983)....................................................................................15, 16

United States v. Hashime,
      (12-5039 filed June 10 2013)..........................................................................15

United States v. Ming Hong,
      242 F.3d 528 (4th Cir. 2001) ..........................................................................15

United States v. Myers,
      280 F.3d 407, 413 (4thCir. 2002) ...................................................................14

## STATUTES

18 U.S.C. § 2...................................................................................................................3
18 U.S.C. § 743...............................................................................................................3
18 U.S.C. § 924  .............................................................................................................1
18 U.S.C. § 924(c)..............................................................................................1, 15, 16
18 U.S.C. § 924(c)(1)(A)................................................................................................3
18 U.S.C. § 1951  ......................................................................................................1, 3
18 U.S.C. § 1951(b).........................................................................................................3
18 U.S.C. § 3742(a) ........................................................................................................1
28 U.S.C. § 1291.............................................................................................................1

# RULES

Federal Rule of Evidence  403 ..............................................................2, 13

Federal Rule of Evidence  611(a) .................................................2, 13, 16

# U.S. CONSTITUTION

U. S. Const. amend. 8........................................................................ 16, 17

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-5015

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DOMINIQUE DEVARRISE USHER,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

**<u>OPENING BRIEF FOR APPELLANT</u>**

<u>STATEMENT OF JURISDICTION</u>

This is a direct appeal by a defendant in a federal criminal case from the

sentence imposed in the United States District Court for the Eastern District of

North Carolina following a jury finding of guilt as to 18 USC 1951(8CTS) and 18

USC 924(c)(7CTS).  Jurisdiction was conferred upon the United States District

Court pursuant to 18 USC 1951 and 18 USC 924.

Appellate jurisdiction is conferred upon the United States Court of Appeals

for the Fourth Circuit pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

Sentence was imposed by the lower court on December 5th 2012  and a judgment

1

incorporating that sentence was filed by the court on  December 5, 2012 .(1560-1578)  Notice of appeal was filed by the defendant on  December 14th 2012.(1585)

## NATURE OF APPEAL

This brief is submitted to the Court pursuant to the decision of the United States Supreme Court two grounds:

1.     The defendant contends that the district court erred in allowing the prosecutor to continuously repeat the testimony of the witnesses after  every question which went beyond the courts discretion under Fed.R.Evid. 611(a) in violation of Federal Rule of Evidence 403.

2.     Sentencing Mr Usher to over 176 years of imprisonment on the charges he was convicted of, constitute cruel and unusual punishment prohibited by the constitution.

## ISSUE PRESENTED

1.     Did the court err in allowing the prosecutor to continuously repeat the testimony of the witnesses thereby allowing the prosecutor to improperly bolster their testimony in violation of Federal Rules 611(a) and 403?

2.     Did the sentencing of Mr. Usher to more than 2119 months constitute prohibited cruel and unusual punishment under the constitution?

## STATEMENT OF THE CASE

**DOMONIC DEVARRISE USHER** was also named in a fifteen-count Fourth Superseding Indictment filed in the Eastern District of North Carolina on May 23, 2012. The Fourth Superseding Indictment charged the following conduct:

Count 1: Conspiracy to Interfere With Interstate Commerce by Robbery from November 2009 to April 14, 2010, in violation of 18 U.S.C. § 1951(b). Counts 2, 4, 6, 8, 10, 12, and 14: Interference With Commerce by Robbery and Aiding and Abetting on November 27, 2009; December 13, 2009, January 25, 2010; January 27, 2010; February 19, 2010; February 23, 2010; and March 13, 2010, respectively, in violation of 18 U.S.C. §§ 1951 and 2. Counts 3, 5, 7, 9, 11, 13, and 15: Using and Carrying a Firearm During and in Relation to a Crime of Violence and Aiding and Abetting on November 27, 2009; December 13, 2009; January 25, 2010; January 27, 2010; February 19, 2010; February 23, 2010; and March 13, 2010, respectively, in violation of 18 U.S.C.(743) §§ 924(c)(1)(A) and 2.  On April 26, 2012 a mistrial was declared by Judge Dever for a hung jury on the Third superseding indictment.(54) On 7-19-2012, the defendant was found guilty on the fourth superseding indictment(1546) and sentenced on Dec. 5, 2012 to 2119 months in total on the charges he faced. (1560)

<u>STATEMENT OF FACTS</u>

Investigation of the instant offense was initiated by the Wayne County Sheriff's Office (WCSO) in Goldsboro, North Carolina, and the Wilson Police Department in Wilson, North Carolina, in conjunction with the Bureau of Alcohol, Tobacco, Firearms and Explosives. The investigation revealed that between November 2009 and April 14, 2010, **DOMONIC DEVARRISE USHER** and/or Anthony David Brown conspired with either Malcolm Jamal Artis, Derrick Dove, Jr., Antonio Deonte Jones, and/or Ivory Javaughntae Harris to commit multiple armed robberies of commercial businesses in Wilson and Wayne Counties. Investigation also revealed **USHER** and other accomplices had engaged in similar conduct since as early as 2008. During the robberies in which **USHER** participated, **USHER** initiated the idea for the commission of the robberies, recruited and directed the activities of other conspirators, and supplied the firearms used in the robberies. Brown also planned and organized several robberies.

There is no indication this was a distinctive hierarchical organization. Rather, **USHER** and Brown worked collectively when necessary, but also acted independently of one another with other conspirators. On at least one occasion, Dove recruited the help of a juvenile (unindicted) who assisted Dove and Brown in a robbery. In some instances, **USHER**, Brown, or Dove received information from current or former employees of the stores victimized by the conspirators.

4

Specifically, the conspirators were advised of the optimal time to commit the robberies. The details of the robberies in which the conspirators were involved are as follows:

Robbery of Dollar General Store #8404 in Goldsboro, North Carolina

On November 27, 2009, **USHER** and an individual known only as "Cal," who each possessed a handgun, entered a Dollar General Store (Dollar General) in Goldsboro, North Carolina. The conspirators concealed their identities by wearing masks over their faces. Upon entering the store, **USHER** and Cal brandished their firearms and approached a cashier. At gunpoint, the conspirators forced the cashier to the back of the business where the store's safe was located. After the safe was opened, **USHER** and Cal removed $2,000 in U.S. currency and exited Dollar General.

Based on the preceding, **USHER** is considered to have otherwise used firearms during the commission of the offense. **USHER** also abducted the cashier by forcing her to another location in the store. **USHER** did not maintain either an aggravated or mitigated role in the offense.

Robbery of Dollar General Store #7612 in Pikeville, North Carolina

On December 13, 2009, **USHER** and Cal, who were each armed with a handgun, entered a Dollar General in Pikeville, North Carolina. Upon entering the

store, either **USHER** or Cal approached the cash register and removed an unspecified quantity of U.S. currency. **USHER** and Cal then entered the store's office, where a safe and an employee were located. At gunpoint, the conspirators directed the employee to open the safe. **USHER** and Cal removed the money from the safe and exited the store. In total, $2,724.73 in U.S. currency was stolen from Dollar General.

Robbery of Dollar General Store #11560 in Goldsboro, North Carolina

On approximately January 25, 2010, **USHER** planned and organized the robbery of a Dollar General in Goldsboro, North Carolina. **USHER** recruited Jones' participation and Jones agreed to serve as the getaway driver. On January 25, 2010, **USHER**, Jones, Brown, and Artis traveled to the Dollar General. At the direction of **USHER**, Jones parked his vehicle at a mobile home park near the store. Jones remained in the vehicle while **USHER**, Brown, and Artis entered Dollar General. The conspirators concealed their identities by wearing bandanas over their faces. **USHER** and Brown possessed handguns and Artis had an AR-15 assault rifle, which belonged to Jones. As they approached a cashier, the conspirators brandished their firearms and yelled, "Give me the money." The conspirators then surrounded the clerk and forced her to the front of the store, where a second employee was located. The conspirators instructed the second victim to open the store's safe and cash register.

6

After stealing a cash register drawer containing $622.66 in U.S. currency, the conspirators exited the store and returned to Jones' vehicle. The conspirators then traveled to Brown's residence in Goldsboro, where they divided the stolen proceeds. Although it is unknown how much money Brown, Artis, and **USHER** received from the robbery, Usher gave $350 to $400 to Jones for his role in the offense.

Based on the preceding, the conspirators are considered to have otherwise used firearms during the commission of the offense. They also abducted the cashier and store manager by forcing them to other locations in the store. Additionally, **USHER** recruited Jones to be the getaway driver in the robbery. As such, **USHER** is considered to have maintained an aggravated role in the offense. Neither an aggravated nor mitigated role adjustment is warranted for Brown, Artis, or Jones, as each fulfilled a critical role and they are considered equally culpable.

Robbery of Family Dollar Store #6563 in Goldsboro, North Carolina.

On January 27, 2010, Brown, who possessed a .38 caliber pistol, and **USHER**, who was armed with a handgun, entered a Family Dollar Store in Goldsboro. The conspirators concealed their identities by wearing bandanas to cover their faces. Upon entering the store, Brown and **USHER** brandished their firearms and demanded money from a store clerk, as well as a customer. After removing $1,445.00 in U.S. currency from the cash register, the conspirators exited

7

the store and fled on foot. Following the robbery, Brown and **USHER** walked to Brown's home in Goldsboro, where they divided the stolen proceeds between themselves.

Based on the preceding, the conspirators are considered to have brandished firearms during the commission of the offense. There is no evidence to suggest any employees or customers were abducted or physically restrained to facilitate the robbery. Neither an aggravated nor mitigated role adjustment is warranted for Brown or **USHER**, as each fulfilled a critical role and they are considered equally culpable.

Robbery of Dollar General Store #9795 in Wilson, North Carolina

On February 19, 2010, **USHER**, Artis, Harris, and Jones used two vehicles to travel to a Dollar General in Wilson. Jones drove one of the vehicles and Harris operated the other. Jones remained in his vehicle while **USHER**, Harris, and Artis entered the Dollar General. The conspirators concealed their identities by wearing bandanas to cover their faces. Harris was unarmed; however, **USHER** and Artis possessed handguns supplied by **USHER**. Upon entering the store, the conspirators brandished their firearms, approached a cashier, and yelled, "Open the cash register." One conspirator held the cashier at gunpoint while the other conspirators walked to an office where the store's safe and manager were located. At gunpoint, the conspirators instructed the manager to open the safe. After removing a cash

8

register drawer containing $1,500 in U.S. currency from the safe, the conspirators exited the store and returned to their vehicles. Following the robbery, they drove to Brown's residence in Goldsboro and divided the stolen proceeds amongst themselves. Although it is unknown how much money **USHER**, Artis, and Harris received from the robbery, Jones received $300 to $400 for his role in the offense.

Based on the preceding, the conspirators are considered to have otherwise used firearms during the commission of the offense. They also physically restrained the cashier and store manager to facilitate the robbery. Neither an aggravated nor mitigated role adjustment is warranted for **USHER**, Artis, Harris, or Jones, as each fulfilled a critical role and they are considered equally culpable.

Robbery of Dollar General Store #8404 in Goldsboro, North Carolina

On February 23, 2010, Brown, Artis, Harris, and **USHER** traveled to a Dollar General in Goldsboro. Harris served as the getaway driver and remained in the vehicle while Artis, who was unarmed, and Brown and **USHER**, who each possessed a handgun, entered the store. The conspirators concealed their identities by wearing bandanas to cover their faces. Upon entering the store, Brown and Usher brandished their firearms and approached a cashier. While Artis provided security in the front of Dollar General, Brown and **USHER** forced the cashier to the store's safe. At some point, Artis became afraid and fled from the store. After the safe was opened, Brown and **USHER** removed a cash register drawer and two

bank bags containing $2,386.33 in U.S. currency and exited Dollar General. When Brown and **USHER** returned to Harris' vehicle, Usher threatened Artis with a gun because Artis left the store prior to completing the robbery.

Following the robbery, the conspirators drove to Brown's residence in Goldsboro and divided the stolen proceeds amongst themselves. Although it is unknown how much money **USHER** and Brown received from the robbery, Harris and Artis received approximately $100 each for their roles in the offense.

Based on the preceding, the conspirators are considered to have otherwise used firearms during the commission of the offense. They also abducted the cashier by forcing her to another location in the store. Neither an aggravated nor mitigated role adjustment is warranted for **USHER**, Brown, Artis, or Harris, as each fulfilled a critical role and they are considered equally culpable.

<u>Robbery of Family Dollar Store #6563 in Goldsboro, North Carolina</u>

On March 1, 2010, **USHER** and Artis entered the Family Dollar in Goldsboro. The conspirators concealed their identities by wearing masks over their faces. **USHER** and Artis brandished handguns and demanded money from the store employee. They exited the store after receiving $297. Based on the preceding, **USHER** is considered to have brandished a firearm during the commission of the offense. He is not considered to have maintained an aggravated role in this robbery.

10

Robbery of Dollar General Store #9795 in Wilson, North Carolina

On approximately March 13, 2010, **USHER** recruited Artis' participation in the robbery of a Dollar General in Wilson. On March 13, 2010, **USHER**, Artis, Brown, Harris, and Jones used two vehicles and traveled to the Dollar General. Jones drove one of the vehicles and Harris operated the other. Jones remained in his vehicle and Artis stayed in Harris' car while Harris, Brown, and **USHER** entered the store. Harris was unarmed; however, **USHER** and Brown each had a handgun supplied by Usher. The conspirators concealed their identities by wearing bandanas to cover their faces. Upon entry, Brown and **USHER** brandished their firearms and approached a cashier and a manager near the store's cash register. The conspirators held the employees at gunpoint and stated, "Go to the safe, open up the safe, get your ass to the safe mother fucker." One conspirator grabbed the manager and pushed him towards the manager's office where the store's safe was located. At gunpoint, two conspirators forced the manager to the safe, while the third conspirator stayed in the front of the store and held the cashier at gunpoint. When they reached the safe, a conspirator pressed the barrel of his gun between the manager's shoulder blades and directed him to open the safe. Once the safe was opened, a conspirator grabbed the manager and pushed him out of the way. The conspirators removed two bank bags and a cash register drawer containing $2,773 in U.S. currency from the safe, exited the store, and returned to their vehicles.

Following the robbery, the conspirators drove to Brown's residence in Goldsboro and divided the stolen proceeds amongst themselves. Although it is unknown how much money **USHER**, Artis, Harris, and Brown received from the robbery, Jones received $300 to $400 for his role in the offense.

Based on the preceding, the conspirators are considered to have otherwise used firearms during the commission of the offense. They also abducted the store manager by forcing him to another location in the store. Additionally, **USHER** recruited Artis' participation in the robbery. 2010 As a result of this information, on April 16, 2010, law enforcement On April 30, 2010, **USHER** was arrested and interviewed by investigators, but he denied any involvement in the robberies.

## SUMMARY OF THE ARGUMENT

1.    The defendant contends that the trial court committed reversible error by not restricting the prosecutor's continuous repetition of witness testimony improperly bolstering the testimony of those witnesses in both trials.

2.    The trial court violated the defendant's constitutional right to be free from cruel and unusual punishment by sentencing him to 2119 months of incarceration for hobbs act robberies and being in possession of a firearm during a crime of violence.

ARGUMENT

**I.    WHETHER THE TRIAL COURT IN ALLOWING THE GOVERNMENT TO REPEATEDLY REPEAT THE TESTIMONY OF WITNESSES IMPROPERLY BOLSTERING THEIR TESTIMONY CREATED REVERSIBLE ERROR IN VIOLATION OF FEDERAL RULE SECTION 611(A) AND FEDERAL RULE 403?**

A.   STANDARD OF REVIEW

The defendant believes that this is a case of first impression before this court. The defendant acknowledges that under current law the trial court enjoys broad discretion in determining how testimony and questioning is handle in court. Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931).The standard of review is abuse of discretion in these matters. **ALFORD** The statute states in pertinent part that "court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:

**(1)** make those procedures effective for determining the truth;

**(2)** avoid wasting time; and

**(3)** protect witnesses from harassment or undue embarrassment."

It is our contention that in this particular circumstance, this must be read in light of Federal Rule 403 which requires" The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence. <u>United States v. Myers</u>, 280 F.3d 407, 413 (4thCir. 2002).

### B.    DISCUSSION

While the defendant recognize the court's broad discretion in regulating how evidence is presented in court. The conduct in this case went well beyond that. Rarely in either trial was the prosecutor restricted from reprising the testimony of witnesses in the questions he asserted, even after repeated objections of the defense.  While the testimony from the witnesses was probative. the repetition of it by the prosecutor violated federal rule 403 by being needlessly repetitive and cumulative. It, therefore. was an abuse of the discretion of the trial court not to limit it in either trial of the defendant.  I would point this court to all of the direct examinations of the prosecutor in this case in both trials to see the pervasive nature of this violation which then rises to  and abuse of discretion.

## II.    DID THE SENTENCING OF MR. USHER TO MORE THAN 2119 MONTHS CONSTITUTE PROHIBITED BY THE 8TH AMENDMENT AS "CRUEL AND UNUSUAL PUNISHMENT" UNDER THE CONSTITUTION?

### A.    STANDARD OF REVIEW

Since 1991, the United States Supreme Court has recognized that a proportionality test is required in determining whether a punishment is cruel and unusual. <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991). The defendant is well aware

that the Fourth Circuit has granted review of these cases only when the minimum sentence of life without parole. United States v. Ming Hong, 242 F.3d 528, 532 (4th Cir. 2001). That test is set out in Solem v. Helm, 463 U.S. 277 (1983), The Court ruled that all courts must do three things to decide whether a sentence is proportional to a specific crime: 1. Compare the nature and gravity of the offense and the harshness of the penalty. 2. Compare the sentences imposed on other criminals in the same jurisdiction; i.e., whether more serious crimes are subject to the same penalty or to less serious penalties. 3. Compare the sentences imposed for commission of the same crime in other jurisdictions. Enmund v. Florida , 458 U.S. 782 (1982).

The defendant also notes that there is a split among the circuits that the Fourth Circuit has acknowledged as recent as June of 2012 in US v. Faisal HASHIME, (12-5039 filed June 10 2013). Moreover the Fourth Circuits position on this issue is in conflict with the US Supreme court opinion in Solem v. Helm which noted that "no penalty is per se constitutional," Solem v. Helm, 463 U.S. 277, 290 (1983) .

B.    DISCUSSION

The sentence of 2119 months is for all intent and purposes a life without parole sentence and the court acknowledges the same in its sentencing transcript in fact the trial judge ordered a life without parole sentence as the alternative sentence

15

if this case was overturned based on the application of 924(c) (1578-1585). The defendant recognizes the statutory requirements of 924(c) for mandatory consecutive sentencing but would note that there is no such requirement on the Hobbs acts robbery. For all the charges, the defendant received the statutory maximum consecutive to each other.

It is a sentence of over 176 years for a crime in which no one suffered physical harm and the total economic less is less than thirty thousand dollars. The defendant argues that it is subject to the test found in <u>Soelm V. Helm</u> and contends that by sentencing the defendant to the very top of the guidelines for every crime convicted of () constitutes "cruel and unusual punishment " in violation of the eighth amendment  and therefore unconstitutional for the crimes alleged.

<u>CONCLUSION</u>

By not restricting the repetition of testimony by the prosecutor, reversible error was committed. Secondly, that a sentence of 2119 months for the crimes convicted of constitute cruel and unusual punishment in violation of the eighth amendment.

**<u>Prayer</u>**

Thus the defendant prays this honorable court reverse the trial court and return this matter for a new trial pursuant to the violation of Federal Rule 611(a) and Federal  403. Or in the alternative reverse the sentencing decision of the trial

16

court and return this matter to the district court for sentencing for a sentencing

consistent with the Eighth Amendment of the Constitution.

Respectfully submitted,

/s/ C. Burell Shella
C.BURELL SHELLA
2530 MERIDIAN PKWY
Durham, NC 27713
NCBN 33552
(919) 806-4271
chrisshella@yahoo.com

ATTORNEY  FOR  DEFENDANT-APPELLANT

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

1.   This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

  X   Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT sans serif typeface such as Arial).  Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point)

  Microsoft Word Times New Roman, 14 point

2. EXCLUSIVE of the corporate disclosure statement, table of contents, table of citations, statement with respect to oral argument, any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

  _   Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief) **OR**

  X   3,496   Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); **OR**

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

 /s/ Christopher B.Shella ESQ.
C.Burell Shella, ESQ.
2530 Meridian Pkwy Suite 300
Durham, NC 27713
NC Bar # 33552

18

<u>CERTIFICATE OF SERVICE</u>

In accordance with Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that I have this day filed, the required copies of the Opening Brief of Appellant with the Office of the Clerk via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to:

Ms. May Parker,
Assistant United States Attorney for the Eastern District of North Carolina,
310New Bern Ave
Raleigh, NC.

This the 30th day of July 2013.

<u>/s/Christopher B.Shella, ESQ.</u>
C.Burell Shella,ESQ.
2530 Meridian Pkwy
Durham NC 27713
NC Bar # 33552

19